584 So.2d 71 (1991)
Thomas E. DAVIDSON, as Personal Representative of the Estate of Debra K. Davidson, Appellant,
v.
Dr. David H. GAILLARD and Humana Hospital of Fort Walton Beach, Florida, a Florida corporation, Appellees.
No. 90-429.
District Court of Appeal of Florida, First District.
July 22, 1991.
Robert G. Kerrigan of Kerrigan, Estess & Rankin, Pensacola and Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for appellant.
S. William Fuller, Jr. and J. Craig Knox of Fuller, Johnson & Farrell, P.A., Tallahassee, for appellee Gaillard.
Frank C. Bozeman and John W. Boult of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Pensacola, for appellee Humana Hosp. of Fort Walton Beach.
NIMMONS, Judge.
In this medical malpractice action, appellant challenges the trial court's denial of a motion for directed verdict regarding proximate causation and its admission of evidence regarding a pending claim against Air Force physicians. We reverse.
*72 In 1981, doctors diagnosed Mrs. Davidson with, and treated her for Hodgkin's Disease, a form of lymphoma. They performed surgery and radiation therapy which resulted in her cancerous condition going into remission. When she experienced fatigue, abdominal pain, and itching in July or August 1983, she consulted an Air Force internal medicine physician, Dr. Ledbetter, for her illness.[1] Dr. Ledbetter referred her to appellee Dr. Gaillard, a diagnostic radiologist at Humana Hospital. In October, 1983, he performed a computerized axial tomography (CT) scan. Finding no abnormal mass or tumor, Dr. Gaillard concluded that there was no evidence of lymphoma. Based on Dr. Gaillard's diagnosis, Dr. Ledbetter informed Mrs. Davidson that neither chemotherapy nor further surgery was needed.
After Mrs. Davidson experienced further symptoms, Dr. Ledbetter asked another Air Force physician in February, 1984, to review the October, 1983, CT scan for signs of Hodgkin's Disease. This time, the consulting radiologist, Dr. Harisomovitch, located a four to five centimeter solid mass on the previous CT scan which indicated possible recurrent Hodgkin's Disease. Dr. Ledbetter then referred Mrs. Davidson to Dr. Brinkley, a radiologist at West Florida Regional Medical Center, who evaluated a new CT scan and found an abdominal mass, which was apparently invading her stomach wall. Dr. Brinkley also recommended another diagnostic procedure testing the upper-gastrointestinal tract for cancerous growth. The Air Force physicians conducted such further testing, which confirmed that the cancer was spreading to her stomach.
Dr. Ledbetter ruled out chemotherapy as an appropriate means to control the cancerous spread. In April 1984, Dr. Silva, an Air Force surgical oncologist, performed an emergency operation on Mrs. Davidson and removed a large portion of her stomach and some of her pancreas. Subsequently, Dr. Silva performed another surgical procedure to remove the remaining tumor since it was now obstructing her bowel. As a result of the surgery, Mrs. Davidson's bowel was perforated and fecal matter spilled into her abdomen. Additionally, hospital personnel improperly placed a feeding tube into her abdomen, rather than her small bowel, thereby raising the chance of bacterial infection.[2] After this condition was discovered, the Air Force doctors administered chemotherapy treatment, but a few days later, Mrs. Davidson died.[3]
The personal representative of the estate of Mrs. Davidson, Thomas E. Davidson, filed suit against Dr. Gaillard and Humana Hospital of Fort Walton Beach for negligence. Before the trial court commenced, appellant, the decedent's husband and plaintiff below, moved in limine for an order excluding reference to a then-pending claim by the appellant against the Air Force physicians. The court denied the motion and ruled that it would allow reference to the claim against the government physicians. The trial court requested that the parties draft a stipulation which would inform the jury that the outcome of such claim should not affect their deliberations.
In the opening statement, the appellant referred to the Air Force claim. Appellees also referred to the Air Force claim, both in the opening statement and during cross-examination of an expert witness, Dr. Palmer. During closing argument, appellees mentioned that Dr. Palmer had been brought in by the plaintiffs to prove their case of negligence against the appellees, but Dr. Palmer had actually criticized the Air Force doctors for negligence. The trial court instructed the jury that the existence *73 of the separate claim should not affect their deliberations.
Both sides presented expert testimony on the issue of negligence. Appellant's expert oncologist, Dr. Palmer, testified that if Dr. Gaillard had diagnosed Mrs. Davidson's recurrent Hodgkin's Disease in October, 1983, chemotherapy treatment could have abated the progress of the disease. Dr. Coonley, a specialist in oncology and hematology, who testified for the defense, believed that had the disease been detected in October, 1983, then Mrs. Davidson would have had "an 80 to 90% [chance] of complete remission and a 50 to 60% chance of long-term survival." His opinion was predicated upon the assumption that the cancer had not already spread to the stomach.
The appellees presented expert testimony that the Air Force doctors' decision to surgically remove Mrs. Davidson's tumor was medically inappropriate. Dr. Noyes, a hematology and oncology professor at the University of Florida, testified that the Air Force physicians breached their duty of care in failing to employ a pulmonary specialist to review Mrs. Davidson's condition during her surgeries. He testified that Mrs. Davidson's death was primarily the result of pulmonary complications and massive infection, rather than the Hodgkin's Disease. He also opined that Dr. Gaillard's failure to detect the tumor on the October, 1983 CT scan did not cause Mrs. Davidson's death.
At the close of evidence, each party moved for directed verdict on the issue of proximate causation. The trial court denied the motions and, without objection, gave the standard jury instruction on negligence and causation.[4] The general verdict form that the jury was given asked: "Was there negligence on the part of defendant, David H. Gaillard, M.D., which was a legal cause of death to Debra Davidson?" The jury's verdict was "no." The plaintiff moved for a new trial, and the trial court denied the motion.
Appellant first argues that the trial court erred in denying his motion for directed verdict on the issue of proximate causation. Although appellant acknowledges that proximate cause is ordinarily a question for the jury, he contends that an exception to this rule applies when an original tortfeasor's negligent act causes a plaintiff to seek medical treatment which is negligently provided and that, in such cases, negligent medical treatment is foreseeable as a matter of law. That appears to be the case.
The general rule as to liability for negligent treatment of injuries caused by a tortfeasor's negligent conduct is stated in Restatement (2d), Torts, § 457 (1965):
If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner.
This rule and its precursors have long been applied in the indemnity context. Stuart v. The Hertz Corporation, 351 So.2d 703, 705-707 (Fla. 1977); see J. Ray Arnold Lumber Corporation of Olustee v. Richardson, 105 Fla. 204, 141 So. 133 (Fla. 1932). The rationale for this rule is that negligent medical treatment is within the scope of the risk created by the original negligent conduct. Other courts have explained that subsequent medical negligence "does not focus on the identity or profession of the original tortfeasor. Rather the principle focuses on the subsequent negligence of the second actor and deems it a foreseeable risk of the primary negligence so that the original tortfeasor may be held responsible for it... ." Carter v. Shirley, *74 21 Mass. App. 503, 488 N.E.2d 16, 20 n. 14 rev. denied, 397 Mass. 1101, 490 N.E.2d 803 (1986). See Restatement (2d), Torts, § 457, comment b at p. 497 (1965).
We recognize that Florida courts have held that if the nature of the subsequent negligent conduct was "highly unusual, extraordinary or bizarre," such negligence is unforeseeable as a matter of law. E.g. Stahl v. Metropolitan Dade County, 438 So.2d 14, 21 (Fla. 3rd DCA 1983). Our review of the record indicates that the facts in this case do not reach the above level of negligent conduct.
Appellees contend that even if the court erred in submitting to the jury the question of whether appellees were insulated from liability by reason of the subsequent conduct of the Air Force physicians, appellant is precluded from asserting such error as reversible because the verdict form utilized in this case was such that the jury's verdict could be read either as a finding that Dr. Gaillard was not negligent (a permissible finding based upon the evidence) or as a finding that his negligence was not the proximate cause of Mrs. Davidson's death (an impermissible finding under our holding herein). Appellees also point out that the verdict form was submitted by the appellant.
In First Interstate Development Corp. v. Ablanedo, 511 So.2d 536, 538 (Fla. 1987), the Supreme Court summarized the two-issue rule as:
[W]here there is no proper objection to the use of a general verdict, reversal is improper where no error is found as to one of two issues submitted to the jury on the basis that the appellant is unable to establish that he has been prejudiced.
The Supreme Court further noted that the two-issue rule applies to those actions which can be brought on two theories of liability, but where a single basis for damages applies. Id. at 538. In the case at bar, appellant's claim solely relies upon Dr. Gaillard's negligence in failing to diagnose Mrs. Davidson's recurrent Hodgkin's Disease in October, 1983.[5] Because Dr. Gaillard's negligence, if any, proximately caused Mrs. Davidson's death, only the issue of Dr. Gaillard's negligence should have reached the jury. We hold that the two-issue rule should not be extended, therefore, to require a claimant to specifically demonstrate, by special interrogatory verdict, the precise element which a jury found lacking in a single cause of action where, as here, one or more issues are improperly submitted to the jury.[6]
Appellant also contends that the trial court erred in denying his motion in limine to exclude mention of pending claims against the Air Force, and prejudicial error arose as a result of such error. Appellee correctly points out that Cenvill Communities, Inc. v. Patti, 458 So.2d 778 (Fla. 4th DCA 1984), rev. denied, 467 So.2d 1000 (Fla. 1985) is controlling law. However, in view of our holding that appellee's negligence, if any, was the proximate cause of Mrs. Davidson's death, evidence of such claims was clearly irrelevant. Likewise, we reject the appellee's argument that the appellant failed to preserve this issue. See Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982); see also LeRetilley v. Harris, 354 So.2d 1213 (Fla. 4th DCA 1978), cert. denied, 359 So.2d 1216 (Fla. 1978).
Accordingly, we reverse and remand for a new trial.
ERVIN and ZEHMER, JJ., concur.
NOTES
[1] Mrs. Davidson received Air Force treatment as a result of her husband's family insurance coverage as an Air Force member.
[2] The feeding tube, known as the "J tube," is supposed to be placed through the abdominal wall into a portion of the small bowel in order to provide the patient with nutrients.
[3] The cause of death was listed on the death certificate as "one, Hodgkin's Disease, Stage IV; two, gastrointestinal bleeding secondary to tumor involvement of the stomach; three, respiratory failure secondary to pulmonary involvement with Hodgkin's Disease; four, small bowel obstruction ; five, sepsis secondary to intestinal contamination of peritoneum."
[4] The trial court's instruction was as follows: Negligence may also be a legal cause of loss, injury or damage, even though it operates in combination with the act of another, some natural cause or some other cause occurring after the negligence occurs, if such other cause was itself reasonably foreseeable and the negligence contributed substantially to producing such loss, injury, or damage, or the resulting loss, injury, damage was a reason [sic] foreseeable consequence of the negligence and the negligence contributes substantially to producing it.
[5] We note that the cause of action for negligence and negligent supervision here share common elements. Therefore, they constitute a single cause of action for purposes of this appeal.
[6] We note that although the preferred procedure to preserve this proximate cause issue for appellate review would have included a request for a special jury instruction on the proximate cause issue, the issue was preserved through the appellant's motion for directed verdict in the circumstances of this case.