792 So.2d 481 (2001)
Mark J. LETZTER, M.D., Mark J. Letzter, M.D., P.A., United Surgeons, P.A., f/k/a Barry Miskin, M.D., P.A., and Pronational Insurance Company, Appellants/Cross-Appellees,
v.
Joseph CEPHAS, Lucien Armand, M.D., and Lucien Armand, M.D., P.A., Appellees/Cross-Appellants.
Nos. 4D99-2182, 4D99-2529.
District Court of Appeal of Florida, Fourth District.
January 24, 2001.
*482 Dinah S. Stein and Mark Hicks of Hicks & Anderson, P.A., Miami, and Bobo, Spicer, Ciotoli, Fulford, Bocchino, DeBevoise *483 & Le Clainche, West Palm Beach, for appellants/cross-appellees.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, L.L.P., West Palm Beach, for Appellee/Cross-Appellant Joseph Cephas.
STEVENSON, J.
This appeal stems from a medical malpractice action in which the plaintiff, Joseph Cephas, sued two treating physicians in the same suit and the jury found negligence as to both. After the verdict was in, the trial judge entered a judgment for the entire amount of damages, jointly and severally, against both Dr. Mark Letzter, the initial treating physician, and Dr. Lucien Armand, the subsequent treating physician. Then, citing Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977), and its rule that the initial tortfeasor may be liable for subsequent medical malpractice, the trial judge denied Letzter's request to apportion the jury's 1.5 million dollar pain and suffering award.[1] Post-trial motions for a new trial were denied and this appeal followed.
On appeal Letzter challenges: (1) the trial court's decision to give the Stuart v. Hertz jury instruction; (2) the judge's failure to allow the jury to determine whether the two defendant doctors were joint tortfeasors; and (3) the trial judge's failure to apportion the non-economic damages award pursuant to section 768.81, Florida Statutes. In sum, we find no error in the trial court's decision to give the requested Stuart v. Hertz instruction. However, we agree that the question of whether the two physicians were joint tortfeasors should have been submitted to the jury, but we find that the error does not require a new trial in this case. Finally, we conclude that the trial judge erred in failing to apportion the non-economic damages award among Doctors Letzter and Armand in accordance with the jury's verdict as provided in section 768.81, Florida Statutes.

The Proceedings Below
In April of 1996, doctors amputated Joseph Cephas' right leg below the knee. In July of 1997, Cephas brought a medical malpractice suit against Dr. Mark J. Letzter and Dr. Lucien Armand, both of whom had treated Cephas.[2] In his complaint, Cephas contended that Dr. Letzter, who initially treated Cephas, had been negligent for taking a wait-and-see approach and failing to timely operate and that Dr. Armand, who later treated Cephas, had been negligent for performing the wrong operation. Dr. Letzter defended by asserting that his treatment fell within the appropriate standard of care and that Cephas' below-the-knee amputation was the result of Dr. Armand's negligence.
In 1990, Cephas was diagnosed with diabetes. Expert testimony on the disease established that diabetes causes a narrowing of the blood vessels; as a result, diabetics are at an increased risk for peripheral vascular disease, a condition that restricts blood flow to one's extremities, thus making it difficult for wounds on those extremities to heal properly. In January of 1996, Cephas went to the emergency room at St. Mary's seeking treatment for an ulcer or wound on his toe on his right foot. Cephas was referred to a vascular specialist, Dr. Letzter, *484 and returned to the hospital on January 22nd.
Letzter diagnosed Cephas with dry gangrene of the right, little toe. Tests revealed that Cephas had arterial blockage, and Letzter advised Cephas that he had two options: one, surgically amputate the toe; or, two, wait and see if the toe would autoamputate, or put in layman's terms, fall off on its own. Dr. Letzter believed the better approach was to wait and see if the toe would autoamputate, as he had reservations about whether a surgical wound would heal given the reduced blood flow to Cephas' foot. The evidence established that, at this juncture, Letzter considered that a distal bypass procedure might be required to restore blood flow to the foot. Letzter testified, however, that he did not immediately perform the procedure because there is a 20 to 30% failure rate and, in the event of failure, Letzter would then be required to amputate the lower portion of Cephas' leg. One medical expert testified that Letzter had acted appropriately and another testified that his wait-and-see plan fell below the standard of care.
Cephas saw Letzter again on February 6th. By this time, a small amount of fluid was draining from the toe and Cephas was complaining of pain in his thigh. Letzter ran some tests regarding the source of the thigh pain. As for the drainage from the toe, Letzter testified that he did not believe the fluid was an indication of wet gangrene; rather, he believed that the small amount of fluid simply indicated that the toe was in the process of autoamputating. One medical expert concurred. Another testified that the fluid was an indication of wet gangrene and that Letzter should have performed the distal bypass immediately.
Cephas was scheduled to see Letzter again on February 13th, but canceled the appointment. Cephas did see Letzter, however, a week later on February 20th. At this time, Letzter told Cephas that surgical intervention was required. Letzter did not view Cephas' condition as an emergency and instructed his staff to schedule the procedure during the next week. One expert concurred that the condition was not an emergency; another testified that the procedure should have been performed within a day or so.
On February 25, 1996, Cephas called Letzter complaining of pain and reporting that the toe had started to fall off. Letzter advised Cephas to "stay the course" and told him that he expected the surgery to be scheduled within the next couple of days. This was Dr. Letzter's last consultation with Cephas.
On March 1, 1996, due to the pain in his foot, Cephas went to the emergency room at Glades Hospital, which was nearer to his home than St. Mary's. Dr. Letzter was not contacted. Cephas was treated by Dr. Armand, a general surgeon who had received his training in Haiti and Canada. On March 4, 1996, Armand amputated Cephas' forefoot. None of the experts criticized the performance of this procedure. In addition to the forefoot amputation, however, Armand performed a femoral-to-popliteal artery bypass on Cephas' right leg. This procedure addressed only blood supply from the femoral artery in the thigh to the popliteal artery above the knee. The medical experts at trial testified that this procedure simply did not address the problem-reduced blood flow to Cephas' foot. Letzter learned of the forefoot amputation on March 7, 1996, when his office called Cephas to discuss scheduling surgery. At least one expert testified that it was below the standard of care for Letzter not to call Armand once he learned of the procedure performed, opining that had Letzter learned the facts, he still could *485 have intervened and performed the appropriate procedurea distal bypass.
On April 5, 1996, Cephas was once again admitted to the hospital. The bypass performed by Armand had failed and the infection had spread. On April 9, 1996, Dr. Armand performed a below the knee amputation of Cephas' right leg. Medical experts agreed that, by this time, the amputation was required.

The Law of Stuart v. Hertz

From the very outset of this trial, one of the primary issues was whether the plaintiff was entitled to an instruction pursuant to the law set forth in Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977). Under traditional negligence principles, a tortfeasor is responsible for all reasonably foreseeable consequences of his or her actions. See, e.g., Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 331 (1925); Cole v. Leach, 405 So.2d 449, 450 (Fla. 4th DCA 1981). An independent, unforeseeable intervening force, however, may serve to break the causal link and extinguish liability. See Gibson v. Avis Rent-A-Car Sys., Inc., 386 So.2d 520, 522 (Fla.1980); Bosket v. Broward County Hous. Auth., 676 So.2d 72, 74 (Fla. 4th DCA 1996). Typically, the question of whether an intervening cause is reasonably foreseeable is for the jury, but an exception exists when subsequent medical negligence in treating the initial injury is involved.
It has long been the law in Florida that when one who is negligent injures another causing him to seek medical treatment, negligence in the administration of that medical treatment is foreseeable and will not serve to break the chain of causation. And, in Stuart v. Hertz Corp., the supreme court reiterated that
"Where one who has suffered personal injuries by reason of the negligence of another exercises reasonable care in securing the services of a competent physician or surgeon, and in following his advice and instructions, and his injuries are thereafter aggravated or increased by the negligence, mistake, or lack of skill of such physician or surgeon, the law regards the negligence of the wrongdoer in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskillful treatment thereof, and holds him liable therefor."
351 So.2d at 707 (quoting J. Ray Arnold Lumber Corp. of Olustee v. Richardson, 105 Fla. 204, 141 So. 133, 135 (1932), quoting Texas & Pacific Ry. Co. v. Hill, 237 U.S. 208, 35 S.Ct. 575, 59 L.Ed. 918 (1915)). When the rule in Stuart v. Hertz applies, the initial tortfeasor's remedy against the succeeding negligent health care provider lies in an action for subrogation. See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla.1980). The foreseeability rule of Stuart v. Hertz has expressly been held to apply even when the initial tortfeasor is a physician as well. See Davidson v. Gaillard, 584 So.2d 71, 73-74 (Fla. 1st DCA 1991), disapproved on other grounds by Barth v. Khubani, 748 So.2d 260 (Fla. 1999).
Ultimately, the trial judge decided to give the Stuart v. Hertz instruction, and in addition to the standard jury instructions on negligence, the jury was read the following:
If Dr. Mark Letzter made a negligent diagnosis or rendered negligent medical treatment to Joseph Cephas and because of that negligence Joseph Cephas ultimately suffered injury as a result of the negligence, mistake, or lack of skill of Dr. Armand, the law regards the negligence of Dr. Letzter as the proximate cause of the damages flowing from the subsequent negligence or unskillful *486 treatment by Dr. Armand and holds Dr. Letzter liable for all the damages.
The jury was then asked to determine (1) whether there was negligence on the part of Dr. Letzter that was the legal cause of injury to the plaintiff and (2) whether there was negligence on the part of Dr. Armand that was the legal cause of injury to the plaintiff. If the answer to either question was "yes," the jury was then asked to apportion the negligence between the two doctors. Letzter had asked the trial judge to submit to the jury the issue of whether the two doctors were joint tortfeasors, but Cephas argued against it and the trial judge refused the request.

The jury verdict
The jury deliberated and answered yes to questions one and two and apportioned the fault at 45% Dr. Letzter and 55% Dr. Armand. After reviewing the verdict, the trial court refused to apportion the noneconomic portion of the damages award in accordance with the jury's assessment of fault, which is required in the case of joint tortfeasors under section 768.81, Florida Statutes. Instead, the trial court determined that the rule in Stuart v. Hertz applied and entered the entire amount of the judgment against both Dr. Letzter and Dr. Armand, jointly and severally. On appeal, Dr. Letzter contends that the trial judge erred in giving the Stuart v. Hertz instruction and in failing to apportion the non-economic damages award.[3]

The Stuart v. Hertz Instruction

Dr. Letzter contends that the jury should not have been given the Stuart v. Hertz instruction, arguing that the instruction is not appropriate where the defendants are joint tortfeasors and that, as a matter of law, he and Dr. Armand are joint tortfeasors. We agree that, by its very definition, the rule in Stuart v. Hertz, which contemplates an initial negligent act causing injury followed by negligent medical treatment for that injury, does not apply to joint tortfeasors. We disagree, however, with Letzter's argument that he and Dr. Armand were joint tortfeasors as a matter of law.
"`Joint tortfeasors' are defined as `[t]hose who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury.'" Ass'n for Retarded Citizens-Volusia, Inc. v. Fletcher, 741 So.2d 520, 530 n. 3 (Fla. 5th DCA)(Harris, J., dissenting) (quoting Black's Law Dictionary 752-53 (5th ed.1979), which cites Bowen v. Iowa Nat'l Mut. Ins. Co., 270 N.C. 486, 155 S.E.2d 238, 242 (1967)), review denied, 744 So.2d 452 (Fla.1999). "In order to be joint tort-feasors in fact, each tort-feasor must have committed some wrong which results in an injury or damage to another. Although there is but a single damage done, there are several wrongs." Phillips v. Hall, 297 So.2d 136, 139 (Fla. 1st DCA 1974)(Boyer, J., concurring specially). Whether or not defendants are joint tortfeasors is a question of fact determined by the circumstances of the particular case. See Sands v. Wilson, 140 Fla. 18, 191 So. 21, 23 (1939). Since at least one view of the evidence in the instant case could support the suggestion that Letzter and Armand were not joint tortfeasors, we find that the trial judge did not err in giving the Stuart v. Hertz instruction. See Seaboard Coast Line R.R. Co. v. Clark, 491 *487 So.2d 1196, 1198 (Fla. 4th DCA 1986); see also Barrios v. Darrach, 629 So.2d 211, 213 (Fla. 3d DCA 1993)(stating that "[w]here inconsistent theories of causation exist, it is error not to instruct on all theories" and that medical malpractice plaintiff was entitled to a Stuart v. Hertz instruction where the case involved "a single injury of disputed causation"); Haas v. Zaccaria, 659 So.2d 1130, 1133-34 (Fla. 4th DCA 1995)(citing and quoting Barrios).
During the proceedings below, causation was the critical issue. The bulk of the evidence suggested that medical experts believed that Dr. Armand's decision to perform a femoral-to-popliteal bypass on Cephas' right leg, which addresses blood supply from the femoral artery in the thigh to the popliteal artery above the knee, was negligent because the procedure did not address the real problemthe reduced blood flow to Cephas' foot. On the issue of Dr. Letzter's negligence, the evidence was more varied. There was evidence from which the jury could have found either (1) that Letzter's initial wait-and-see approach was negligent, allowing the infection to set in, and that this "initial injury" gave rise to all of the subsequent medical treatment given by Dr. Armand or (2) that Letzter's and Armand's negligence combined to cause the amputation, which was the initial injury. In short, given the evidence, it was up to the jury to decide if the negligent actions of Drs. Letzter and Armand combined to create the initial injury, i.e., whether the two physicians were joint tortfeasors.

The trial court's failure to apportion the damages award
After the verdict was in, despite the jury's apportionment of fault among Drs. Letzter and Armand, the trial judge entered the entire amount of the judgment against both physicians. In so doing, the judge expressly ruled that Stuart v. Hertz applied to the case before him and refused to apportion the non-economic damages in accordance with the jury's allocation of fault. Dr. Letzter contends that this failure to apportion the non-economic damages was error. We agree.
Section 768.81, Florida Statutes, requires the apportionment of the noneconomic damages portion of the judgment in cases involving joint tortfeasors. See § 768.81(3)-(4), Fla.Stat.; see also Beverly Enters.-Fla., Inc. v. McVey, 739 So.2d 646, 650 (Fla. 2d DCA 1999), review denied, 751 So.2d 1250 (Fla.2000). Given the disputed testimony at trial, the issue of whether Letzter and Armand were joint tortfeasors was for the jury to decide. In assessing how the jury resolved this issue, we must presume that the jury followed the court's instructions and applied the law to the facts as it found them. See Eley v. Moris, 478 So.2d 1100, 1103 (Fla. 3d DCA 1985). By finding Dr. Armand the legal cause of damage to Cephas, and allocating fault among Drs. Letzter and Armand, the jury must have rejected the application of Stuart v. Hertz and found the physicians joint tortfeasors. Otherwise, the jury would not have found any negligence on the part of Dr. Armand which was the legal cause of injury to Cephas since, under Stuart v. Hertz, Letzter would have been legally responsible for any injury caused by Armand's negligence. Thus, it was error for the trial judge to refuse to apportion the non-economic damages award pursuant to section 768.81.
Moreover, we point out that Cephas is in no position to complain about the lack of a clearer or more definitive jury finding on this issue as it was he who objected to specifically asking the jury whether the physicians were joint tortfeasors. This is nothing more than the natural corollary to the rule that a litigant may not cry "foul" *488 when a jury instruction which the litigant has requested is actually given by the court. See Schaffer v. Pulido, 492 So.2d 1157, 1157-58 (Fla. 3d DCA 1986)(holding that invited error doctrine precluded plaintiff from complaining of both a jury instruction given at his request and the trial court's use of a verdict form which he submitted). And, even on appeal, Cephas contends that any error in failing to submit this question to the jury on the verdict form is harmless because the jury was permitted to allocate fault.
Accordingly, while we affirm the jury's verdict, the final judgment is reversed and the case is remanded with instructions that the $1.5 million non-economic damages award be apportioned between Drs. Letzter and Armand consistent with the jury's allocation of fault.

Is Stuart v. Hertz still viable?

A significant issue in this appeal was the propriety of the Stuart v. Hertz instruction given by the trial court. As demonstrated by the discussion in this opinion, a Stuart v. Hertz instruction is awkward when the plaintiff chooses to sue both tortfeasors in the same lawsuit and is particularly problematic when both tortfeasors are physicians. Furthermore, the underlying premise of holding the initial tortfeasor liable for the subsequent medical malpractice of another party may be at odds with the legislative purposes of chapter 768 which show a preference for making each tortfeasor liable only for his own negligence. For the reasons articulated in Judge Klein's special concurrence, we certify the following questions to the Florida Supreme Court as ones of great public importance:
(1) Has the doctrine of Stuart v. Hertz been abrogated by the Tort Reform and Insurance Act of 1986, Chapter 86-160, Laws of Florida?
(2) Does Stuart v. Hertz apply when the initial cause of action is one in medical malpractice and both the initial and subsequent tortfeasors are sued in the same action?
AFFIRMED in part, REVERSED in part and REMANDED.
HAZOURI, J., concurs.
KLEIN, J., concurs specially with opinion.
KLEIN, J., specially concurring.
I agree with the result reached by the majority, which is that the plaintiff cannot recover all damages against the first negligent physician, but for a different reason.
The Tort Reform and Insurance Act of 1986, Chapter 86-160, Laws of Florida, which "applies to any action for damages," provides that "the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." § 768.81(1), (3). Under the Act, the first negligent physician cannot, in my opinion, be held liable for more than his percentage of fault as found by the jury.
I believe that Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977), in which the Florida Supreme Court held that the defendant in an auto accident case would be liable for 100% of plaintiff's damages, even though some of those damages were caused by medical malpractice, is contrary to the Act, and no longer good law. Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932)(common law is in effect only insofar as it is not inconsistent with legislation).
Although some courts have held that the Act applies only where the defendants are joint tortfeasors[4], and adhere to Stuart, *489 there is no language in the legislation which limits its applicability to joint tortfeasors. The title of the Act, sections 768.71-81, is "Damages," and the provision specifically applicable in this case, section 768.81(3) is entitled "Apportionment of Damages."
In Fabre v. Marin, 623 So.2d 1182, 1185 (Fla.1993), the Florida Supreme Court was applying section 768.81(3) to a single accident and discussed the allocation of percentage of fault in terms of how a defendant "contributed to the accident." The statute, however, focuses on damages, not accidents, and does not distinguish between damages caused by joint tortfeasors or, as in this case, separate tortfeasors.
In Gross v. Lyons, 763 So.2d 276 (Fla. 2000), the plaintiff was involved in two automobile accidents three months apart, and sued only the tortfeasor causing the first accident. The Florida Supreme Court held that if the damages could not be apportioned between the two accidents, then the damages did not have to be apportioned under section 768.81(3). It is apparent from Gross that if the injuries could have been apportioned, the party causing the first accident would only have been liable for her portion. Gross is consistent with my conclusion that Stuart has been abrogated by the Act.
NOTES
[1] Although Dr. Armand remained a named defendant, he apparently did not have insurance coverage and failed to participate at trial or in this appeal.
[2] Glades Hospital, the facility where Dr. Armand treated Cephas, was also named as a defendant. Prior to trial, however, final judgment was entered in favor of Glades Hospital on the counts pertaining to it.
[3] Cephas has cross appealed, contending that he was entitled to a directed verdict in his favor on the affirmative defenses raised by Dr. Letzter under section 768.81(3) because that statute is unconstitutional-both as enacted and as interpreted by the supreme court in Fabre. We affirm as to this issue. See Smith v. Dep't of Ins., 507 So.2d 1080, 1090-92 (Fla.1987).
[4] Beverly Enterprises Florida, Inc. v. McVey, 739 So.2d 646 (Fla. 2d DCA 1999); Ass'n for Retarded Citizens-Volusia, Inc. v. Fletcher, 741 So.2d 520 (Fla. 5th DCA 1999). Judge Harris dissented in Fletcher; however, his conclusion that the defendants in Fletcher, who were negligent at different times, are still joint tortfeasors, cannot be reconciled with Stuart, which held that the defendant motorist and the physician were not joint tortfeasors. 351 So.2d at 706.