758 So.2d 1196 (2000)
Cindy EWING and Larry Ewing, her husband, individually, and as parents and natural guardians of Derek Dwayne Ewing, a minor child, Appellants,
v.
Louis SELLINGER, M.D., Louis H. Anderson, M.D. and Louis H. Anderson, M.D., P.A., Appellees.
No. 4D99-0037.
District Court of Appeal of Florida, Fourth District.
May 10, 2000.
Rehearing Denied June 23, 2000.
Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., and Rebecca Larson of Montgomery & Larmoyeux, West Palm Beach, for appellants.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellees.
WARNER, C.J.
In their appeal from an order granting a post-trial directed verdict in favor of the doctor in a medical malpractice case involving the labor and birth of appellants' child, the appellants contend that they provided a prima facie case of negligence through their expert witness who testified that had appellee, Dr. Sellinger, performed *1197 a risk evaluation on the appellant prior to her labor, he would have directed that a physician be present at birth and the course of her labor would have been better handled. Because the doctor who was on call at the time of her delivery testified that even if a risk evaluation had been performed, he would not have handled the delivery any differently than what occurred, we conclude that the causal chain from appellee's negligence to appellant's injuries has not been proven, and we affirm.
This case involves a medical malpractice claim against various doctors and health care providers for the negligent delivery of a 10½ pound infant, and for injuries sustained by the mother, Cindy Ewing, during birth. As she had done with her first pregnancy, Mrs. Ewing elected to receive her prenatal care from Care Delivery, Inc., a nurse/midwife clinic. Drs. Louis Sellinger and Louis Anderson, both obstetricians, contracted with the clinic to provide obstetrical services when necessary to the clinic's patients.
After Ewing had passed her due date, Dr. Sellinger saw Ewing on behalf of the clinic and directed that she be induced into labor at the hospital. He then returned her care and monitoring to Care Delivery. Ewing reported to the hospital the next day, where her labor was induced and monitored by the nurses employed by Care Delivery. It progressed slowly until about 5:40 p.m., when she began the second stage of labor. By 6 p.m. she was fully dilated and pushing. After nearly two hours at this stage, the nurse/midwife sought the help of the on call physician, Dr. Anderson. Dr. Anderson assisted in the final stage of delivery and repaired the necessary episiotomy. Unfortunately for Ewing, the episiotomy failed, causing her to suffer permanent fecal incontinence. The child was cyanotic when born from lack of oxygen and allegedly suffered permanent damage. As a result, this medical malpractice action was filed.
At trial, Ewing's expert testified that Dr. Sellinger was negligent at the time of his examination by failing to perform a risk assessment, as Ewing showed many risk factors for macrosomia (delivering a big baby). Macrosomia could entail additional dangers to both mother and child and frequently requires that the mother undergo a caesarean section to secure a healthy delivery. The plaintiff's theory was that had Dr. Sellinger performed that risk assessment, he would have been required to take over Ewing's care and direct that a physician attend to her during labor and delivery. Thus, if she had been under a doctor's care, a different course of action would have been followed during the delivery, avoiding injury to the mother and child. Specifically, the expert testified that because of the fetal distress shown on the fetal monitor strips, a c-section would have been performed by 7 p.m., thereby avoiding the episiotomy and its unfortunate consequences.
To establish a cause of action for negligence the plaintiff must show that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, that the breach caused plaintiff's injury, and that damages are owed. See Miller v. Foster, 686 So.2d 783, 783 (Fla. 4th DCA 1997); see also Cato v. West Florida Hosp., Inc., 471 So.2d 598, 600 (Fla. 1st DCA 1985). In the instant case, the trial court granted the judgment notwithstanding the verdict based upon Gooding v. University Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984), finding that the Ewings failed to present any evidence that Dr. Sellinger causally contributed to their injuries. In Gooding the supreme court acknowledged that Florida courts follow the "more likely than not" standard of causation and require proof that the negligence probably caused the plaintiff's injury. See id. In applying this standard to the death of the patient in Gooding, the court held that "the plaintiff must show that what was done or failed to be done *1198 probably would have affected the outcome." Id. at 1020.
Applying this standard to the present case, we agree with the trial court that the Ewings failed to meet it. Their expert testified that had Dr. Sellinger performed a proper risk evaluation, he would have ordered physician managed care of Ewing through her delivery. Had that occurred, and based upon the subsequent fetal distress seen during delivery, an attending physician would have performed a c-section by 7 p.m. However, Dr. Anderson, who was the on-call physician at the hospital on the night of Ewing's labor, testified that based upon his review of the patient, if he had been asked at any point during her labor to intervene in Ewing's care and had reviewed the fetal monitor strips, he would not have elected to perform a c-section, as the labor was progressing adequately. Thus, what Dr. Sellinger failed to do, i.e., continue Ewing's supervision under the care of a physician, would not have affected the outcome in the instant case because the physician who was available to intervene and perform a c-section testified that he would not have done so.
Affirmed.
KLEIN, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.