847 So.2d 1001 (2003)
Richard Larry GOOLSBY, et al., Appellant,
v.
Ahktar QAZI, M.D., et al., Appellee.
No. 5D01-3055.
District Court of Appeal of Florida, Fifth District.
April 11, 2003.
Rehearing Denied June 26, 2003.
*1002 Mayanne Downs of King, Blackwell & Downs, P.A., Orlando, for Appellant.
Michael A. Estes and Eric P. Gibbs of Hannah, Estes & Ingram, P.A., Orlando, for Appellee.
THOMPSON, C.J.
Richard and Dana Goolsby, as parents of Ashley Goolsby, appeal an order directing a verdict in favor of Ahktar Qazi, M.D. The Goolsbys contend that the evidence was sufficient to pose to the jury the question whether Qazi's alleged negligence in reading an x-ray as normal caused damages to Ashley. We agree and reverse.
When Ashley was born, nurses notified her pediatrician that they heard hip clicks. The pediatrician wrote in her notes: "rule out congenital hip dysplasia," and "positive hip click bilateral." Hip clicks usually resolve themselves, but they can also be a sign that the hips are dislocated, and Ashley's family had a strong history of hip dysplasia. If noted, the dislocation can be treated successfully with a Pavlik's harness followed by another device. The harness holds the joints in place until they become aligned properly. The pediatrician ordered x-rays from Qazi, and referred Ashley to an orthopedic surgeon, but neither diagnosed dysplasia. Ashley's expert testified that she was born with dysplasia.
Ashley's condition was not discovered until she was 36 months old. Because her bones had ossified by this time, she needed procedures involving surgical fractures and shortening of the socket. By the time of trial, Ashley had undergone reconstructive surgery which involved cutting the pelvis, shortening bone, and adding screws, plates, and bone grafts for each hip. She would most likely require more surgery. Experts testified that the x-rays showed dysplasia of the hip and that both Qazi and the orthopedic surgeon were negligent in reading the x-rays as normal.
The trial court apparently directed a verdict in favor of Qazi because there was no evidence that his misreading of the x-ray caused the failure to timely treat Ashley with a Pavlik harness. A motion for directed verdict should be granted when there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the nonmoving party. Cecile Resort, Ltd. v. Hokanson, 729 So.2d 446, 447 (Fla. 5th DCA 1999) (citing American Motors Corp. v. Ellis, 403 So.2d 459, 467 (Fla. 5th DCA 1981)). "In considering a motion for directed verdict for the defendant, the court is required to evaluate the testimony in the light most favorable to the plaintiff and every reasonable inference deduced from the evidence must be indulged in plaintiff's favor." Id. (quoting *1003 American Motors Corp.). This is the test used by the trial court as well as the standard of review on appeal. Id. (citing Ritz v. Florida Patient's Compensation Fund, 436 So.2d 987, 989 (Fla. 5th DCA 1983)).
In support of the court's ruling, Qazi points out that the court held in Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla.1984), that "a patient in a medical malpractice case must show that the injury more likely than not resulted from the defendant's negligence in order to establish a jury question on proximate cause." Id. at 1020. "In other words, the plaintiff must show that what was done or failed to be done probably would have affected the outcome." Id. Qazi further points out that the evidence did not show that the orthopedic surgeon saw Qazi's report, and that the only person shown by the evidence to have seen the report is the pediatrician. Qazi points out that there was no showing that the pediatrician would have changed her treatment if she had been informed that the x-rays showed dysplasia, or that she would have attempted to influence the treatment being provided by other doctors. Further, there is no evidence that any other doctor would have acceded to any attempt by the pediatrician to intervene. That being so, Qazi argues, there is no showing that his reading of the x-rays had any effect on the outcome.
Qazi cites Ewing v. Sellinger, 758 So.2d 1196, 1197-98 (Fla. 4th DCA 2000) in which the plaintiffs alleged that Dr. Sellinger, an obstetrician, was negligent in failing to make a risk assessment. Had the obstetrician done so, the plaintiff claimed, he would have been required to direct that a physician, rather than nurse/midwives, attend her labor and delivery. The plaintiff's labor was prolonged, and the nurse/midwives eventually sought the assistance of Dr. Anderson, the on-call physician, but both mother and child suffered permanent injuries. The plaintiff claimed that the outcome would have been different if her labor and delivery had been attended by a physician because a physician would have noted distress shown on fetal monitors strips and would have ordered a caesarian section.
On appeal, the court affirmed a directed verdict in favor of Sellinger:
Dr. Anderson, who was the on-call physician at the hospital on the night of Ewing's labor, testified that based upon his review of the patient, if he had been asked at any point during her labor to intervene in Ewing's care and had reviewed the fetal monitor strips, he would not have elected to perform a c-section, as the labor was progressing adequately. Thus, what Ewing failed to do, i.e., continue Ewing's supervision under the care of a physician, would not have affected the outcome in the instant case because the physician who was available to intervene and perform a c-section testified that he would not have done so.
Id. at 1198 (emphasis in original).
We disagree with Ewing if it means that the negligent failure to diagnose a condition cannot be the cause of damages if a subsequent treater testifies that he would have shrugged off the correct diagnosis. Further, Ashley's pediatrician did not testify that she would have ignored a reading of dysplasia if that had been Qazi's opinion. Nor is it a fair inference to say that the pediatrician would have ignored an opinion she herself ordered.
Instead, we agree with the majority in Munoz v. South Miami Hospital, Inc., 764 So.2d 854 (Fla. 3d DCA 2000):
And it is not for the defendants, who putatively violated their standard of care by failing to warn, to argue that their *1004 not doing so had no effect on the situation, when their doing the appropriate thing would have removed all doubt. As was said in Seley v. G.D. Searle & Co., [67 Ohio St.2d 192, 423 N.E.2d 831 (Ohio 1981) ]:
[O]nly speculation can support the assumption that an adequate warning, properly communicated, would not have influenced the course of conduct adopted by a physician, even where the physician had previously received the information contained therein. "What the doctor might or might not have done had he been adequately warned is not an element plaintiff must prove as a part of her case."
67 Ohio St.2d [192,] 201, 423 N.E.2d at 839 (footnote omitted) (quoting Hamilton v. Hardy, 37 Colo.App. 375, 387, 549 P.2d 1099, 1109 (1976), overruled on different grounds by State Bd. of Medical Examiners v. McCroskey, 880 P.2d 1188 (Colo.1994)).
Id. at 857.
We reverse the judgment in favor of Qazi because the Goolsbys were not obliged to prove that the pediatrician would not have been negligent, or the precise steps the pediatrician would have taken to insure the health of her patient, if Qazi's reading had been positive for hip dysplasia.
REVERSED.
SAWAYA, J., and HARRIS, Senior Judge, concur.