POLSTON, J.,
dissenting.
I respectfully dissent because I conclude that the Fourth District’s decision in Saunders v. Dickens, 103 So.3d 871 (Fla. 4th DCA 2012), does not expressly and directly conflict with the Third District’s decision in Muñoz v. South Miami Hospital, Inc., 764 So.2d 854 (Fla. 3d DCA 2000), or the Fifth District’s decision in Goolsby v. Qazi, 847 So.2d 1001 (Fla. 5th DCA 2003). Therefore, there is no basis for this Court to exercise jurisdiction.
In Muñoz, 764 So.2d at 855-56, the plaintiffs sued, among others, the obstetrician-gynecologist (OBGYN), who treated the expectant mother, and the hospital, where their child was delivered, arguing that their child’s kidney condition would have been preventable had the OBGYN and the hospital personnel personally informed the subsequent treating physician of the child’s adverse sonogram results. However, the question of causation was taken away from the jury when the trial court entered summary judgment in favor of the defendants, concluding that the alleged negligence of the OBGYN and the hospital could not have been “the legal cause of the child’s condition because [the subsequent treating physician] ... had in fact been informed of the sonogram results by the child’s parents and grandparents, and testified that being also told by the [OBGYN] or the hospital personnel would have made no difference.” Id. at 856. On appeal, the Third District reversed, explaining that the subsequent treating physician’s testimony as to what he would or would not have done if the OBGYN or hospital personnel had personally informed him of the results, although admissible, could not be given “conclusive effect” as a matter of law, and that the issue of causation was for the jury to determine. Id. at 856-57. -
Similarly, in Goolsby, 847 So.2d at 1002-03, the issue of causation was taken from the jury when the trial court entered a directed verdict for the defendant physician, based on his argument that there was no evidence that the subsequent treating physician would have changed her treatment if the defendant had read the x-rays properly and informed her that the x-rays indicated hip dysplasia in the patient. On appeal, the Fifth District reversed, explaining that it disagreed that “the negligent failure to diagnose a condition cannot be the cause of damages if a subsequent treater testifies that he would have shrugged off a correct diagnosis,” especially since the subsequent treating physician in Goolsby did not testify that she would *444 have ignored the correct diagnosis if it had been given, and concluding that “the evidence was sufficient to pose to the jury the question [of] whether [the defendant’s] alleged negligence in reading an x-ray as normal caused damages to the [patient].” Id.
In this case, the defendant, Dr. Dickens, moved for a directed verdict, arguing that the plaintiffs failed to present evidence of causation given the subsequent treating physician’s testimony that, even if Dr. Dickens had ordered the cervical MRI in July 2003 and the results were the same as those in September 2003, he still would not have operated on the neck at that time. Saunders, 103 So.3d at 876. However, unlike Muñoz and Goolsby, the trial court denied the motion for a directed verdict, finding that the issue of causation was for the jury to determine. Id. Thus, the case actually went to the jury, and the jury returned a verdict in favor of Dr. Dickens. Id. This is the essential factor that distinguishes this case from Muñoz and Gools-by.
Because the Fourth District’s decision is factually distinguishable from Muñoz and Goolsby, there is no express and direct conflict, and this Court does not have jurisdiction.
CANADY, J., concurs.