CANADY, J., dissenting.
The Fourth District's decision in Cantore v. West Boca Medical Center, Inc. , 174 So.3d 1114 (Fla. 4th DCA 2015), does not expressly and directly conflict with this Court's decision in Saunders v. Dickens , 151 So.3d 434 (Fla. 2014), "on the same question of law." Art. V, § 3(b)(3), Fla. Const. Because this Court lacks jurisdiction to review Cantore , I dissent.
My disagreement with the majority's determination of jurisdiction is twofold. First, Cantore and Saunders involve entirely different questions of law regarding medical malpractice actions. Cantore involves the admissibility of certain deposition testimony from a "subsequent" treating physician. In Saunders , this Court's majority couched its holding, in part, in terms of the relevance and admissibility of the subsequent treating physician's deposition testimony, but that language in Saunders is mere dicta. The actual question of law in Saunders involved not whether the testimony was admissible but rather whether the testimony could be given conclusive effect regarding the element of causation. Second, even if Saunders can properly be read to involve the issue of admissibility, jurisdiction is still lacking because Cantore and Saunders do not involve substantially similar controlling facts. Among other things, the nature of the testimony at issue *1040 in Cantore is significantly different from the specific type of testimony proscribed by Saunders .
The Actual Question of Law in Saunders
This Court's majority in Saunders chose to couch its holding, in part, in terms of the relevance and admissibility of the deposition testimony. Saunders , 151 So.3d at 443. Here, the majority's determination of jurisdiction rests squarely on the admissibility aspect of the "holding" in Saunders . See majority op. at 1033 (quashing the Fourth District's decision "[b]ecause the treating physician's deposition testimony ... was inadmissible"). But Saunders ' reference to relevance and admissibility cannot properly form the basis for jurisdiction. That reference is not only dicta, but it purports to constitute a holding on an issue of law that was never even presented to this Court.
In Saunders , the original treating physician (a neurologist) was the only remaining defendant in the case at the time of trial. Saunders , 151 So.3d at 436, 437. All of the other named defendants, including the subsequent treating physician (a neurosurgeon), settled with the plaintiffs prior to trial. Id. at 437. The subsequent treating physician was, however, later included as a Fabre[6] defendant on the verdict form. Id. During the subsequent treating physician's deposition, which was taken prior to his reaching a settlement with the plaintiffs, the subsequent treating physician testified that he would not have done things differently even if the original treating physician had ordered a cervical MRI (which likely would have revealed the patient's cervical compression). Id. at 438. At trial, the defendant (the original treating physician) introduced the deposition testimony of the subsequent treating physician, and defense counsel argued to the jury during closing statements that given the deposition testimony, the plaintiffs could not prove the requisite element of causation. Id. Plaintiffs' counsel objected to defense counsel's closing argument "on the basis that this was a misstatement of the law," but the trial court overruled the objection. Id. at 438-39. The jury returned a verdict in favor of the defendant physician. Id. at 439. On appeal, the Fourth District framed the issue regarding defense counsel's closing argument as one involving the burden of proof. Namely, the Fourth District "held that" the closing argument "was not improper" and that defense counsel "did not improperly shift the burden of proof." Id. There is nothing to indicate that the separate issue of the admissibility of the deposition testimony was in any way presented to the Fourth District.
On review of the Fourth District's decision, this Court in Saunders similarly framed the legal issue presented as one involving "the burden of proof in negligence actions." Id. at 440. Saunders concluded that defense counsel misleadingly misstated the law during closing statements when he claimed that the subsequent treating physician's deposition testimony rendered it impossible for the jury to conclude that any negligence by the defendant physician caused the injury. Id. at 442. Saunders then determined that the trial court committed harmful error by allowing defense counsel to mislead the jury, for the following two reasons: (1) defense counsel "repeatedly relied on [the deposition] testimony in his improper burden-shifting statements," and (2) the jury was not permitted to hear that the deposition was taken while the subsequent treating physician "was in an adversarial relationship with" the plaintiffs. Id. at 442-43. Without providing any framework for doing so, the majority in Saunders *1041 couched its holding, in part, in terms of the relevance and admissibility of the deposition testimony: "we hold that testimony that a subsequent treating physician would not have treated the patient plaintiff differently had the defendant physician acted within the applicable standard of care is irrelevant and inadmissible and will not insulate a defendant physician from liability for his or her own negligence." Id. at 443 (emphasis added). There is nothing to indicate that the issue of admissibility was in any way presented to this Court. None of the analysis in Saunders addresses the issue of admissibility.
Lacking any foundation in the Court's analysis, the language in Saunders regarding relevance and admissibility simply pops up from nowhere in the conclusion of the opinion. It is wholly unnecessary to the resolution of the case and is thus mere dicta. Under article V, section 3(b)(3) of the Florida Constitution, express and direct conflict cannot be established based on a purported conflict with a sua sponte statement from this Court-whether couched as a holding or otherwise-regarding some future issue that was never presented or analyzed in the case. Rather, that constitutional requirement must be grounded in a decision concerning an issue actually presented and considered by the Court. And in Saunders , the only "question of law" that was actually "deci[ded]" involved the burden of proof and whether certain testimony could be given conclusive effect regarding the element of causation. See art. V, § 3(b)(3), Fla. Const.
To further illustrate how untethered the issue of admissibility was to the decision in Saunders , one need only look to the other three cases examined by this Court's majority in Saunders -namely, Ewing v. Sellinger , 758 So.2d 1196 (Fla. 4th DCA 2000), and the two conflict cases of Goolsby v. Qazi , 847 So.2d 1001 (Fla. 5th DCA 2003), and Munoz v. South Miami Hospital, Inc. , 764 So.2d 854 (Fla. 3d DCA 2000). Not one of those three cases turned on the issue of admissibility. Rather, those cases involved whether certain what-if testimony-or the absence of such testimony-was dispositive regarding the element of causation.
In Munoz , the issue was whether summary judgment was properly granted in favor of certain defendants based on testimony from one of the defendant physicians regarding "what he would or would not have done in response to warnings which should have been but were never in fact given." Munoz , 764 So.2d at 856. In Goolsby , the issue was whether a directed verdict was properly granted in favor of a defendant physician based on the absence of evidence showing that any of the other physicians involved would have done anything differently even if the x-rays had been properly read. Goolsby , 847 So.2d at 1002-03. And in Ewing , the issue was whether a directed verdict was properly granted in favor of the defendant physician based on testimony from the subsequent treating physician that he would not have done anything differently even if the defendant physician had performed a risk evaluation. Ewing , 758 So.2d at 1196-97. These three district court cases all involve the conclusive effect of testimony as opposed to the admissibility of that testimony. And this Court's majority in Saunders , 151 So.3d at 443, unequivocally approved the conflict case of Munoz , in which the Third District specifically noted that, although the what-if statements at issue "surely cannot be given conclusive effect" to warrant summary judgment, the statements were indeed admissible , Munoz , 764 So.2d at 856.
The entire context of Saunders and the district court cases examined by Saunders makes clear that the question of law decided *1042 in Saunders involved causation and the burden of proof, not admissibility. The actual holding of Saunders is thus that testimony by a subsequent treating physician regarding what he or she would have done cannot be given conclusive effect regarding the element of causation. Although such testimony may create an inference of no causation, ultimately the case cannot be decided as a matter of law based on what a particular physician would have done as opposed to what a hypothetical physician operating under the professional standard of care would have done.
In short, because the decisions in Saunders and Cantore involve entirely different questions of law, this Court does not have jurisdiction to review Cantore .
The Differing Factual Nature of Saunders and Cantore
Even assuming that Saunders can properly be read to involve the issue of admissibility, conflict jurisdiction still does not exist. Although Saunders and Cantore both involve a "subsequent" treating physician's testimony, they do so in very different factual contexts, and the nature of the deposition testimony in Cantore is not the specific type of testimony proscribed by Saunders . Because the two cases do not "involve[e] substantially the same facts," this Court does not have jurisdiction. Nielsen v. City of Sarasota , 117 So.2d 731, 735 (Fla. 1960).
As an initial matter, Cantore is distinguishable from Saunders based on the underlying nature of the subsequent treating physicians in the two cases. For example, unlike Saunders -in which, unbeknownst to the jury, the subsequent treating physician had been an active defendant at the time of his deposition-the district court in Cantore described the subsequent treating physician as being "at all times a neutral third-party witness with no motivation to deny wrongdoing or avoid liability as he was never a defendant, unlike the testifying neurosurgeon in Saunders ." Cantore , 174 So.3d at 1121.[7] Additionally, in Cantore , the district court made clear that the subsequent treating physician was also intimately involved in and "played such an influential role in the care at issue:" the original treating physician and other medical personnel at the original treating physician's hospital "continually followed [the subsequent treating physician's] instructions, heeded his recommendations, and noted his preferences." Id. at 1119. This "hybrid" role, id. , played by the subsequent treating physician is significantly different than that in Saunders . Finally, unlike Saunders , the district court in Cantore repeatedly referred to the subsequent treating physician as an "expert" witness. See id. at 1115, 1119, 1120. Saunders itself recognized that medical malpractice actions "often involve" expert witnesses testifying to hypotheticals involving "what a reasonably prudent physician would have done and the effect that such reasonable care would have had on the patient." Saunders , 151 So.3d at 442 (emphasis added). And that is exactly how the district court portrayed the subsequent treating physician in Cantore -as an expert witness testifying regarding hypotheticals. The majority here ignores the differences between the subsequent treating physicians in Saunders and Cantore .
Cantore is also distinguishable from Saunders based on the underlying nature of the deposition testimony in the two cases. In Saunders , this Court's majority proscribed (in dicta) certain specific testimony from a subsequent treating physician-namely, *1043 testimony "that adequate care by the defendant physician would not have altered the subsequent care." Saunders , 151 So.3d at 442. That proscribed testimony is missing here. In Cantore , the "true condition" of the child while under the physical care of the original treating physician was very much in dispute at trial and was the critical factual issue for the jury to decide. As the district court noted, the original treating physician's "action (or inaction) was the focus of the entire five-week trial," Cantore , 174 So.3d at 1121, and the plaintiffs' "strategy during the course of the litigation and at trial was to demonstrate that [the original treating physician] failed to appreciate [the child's] true condition and as a result provided inaccurate information to multiple healthcare providers at [Miami Children's Hospital], including, but not limited to, [the subsequent treating physician]," id. at 1120. What is clear from the district court's opinion is that the subsequent treating physician's deposition testimony regarding the likelihood of the same end result was based only on the underlying assumption that the child was "alert and oriented," as opposed to deteriorating neurologically. Id. at 1117. And that underlying assumption "was based on his understanding of [the child's] condition at that time." Id. at 1119. In fact, the district court specifically noted that the subsequent treating physician testified "that he would have made different recommendations to intubate and administer diuretics had he been told" that the child's condition was as the plaintiffs suggested-that is, deteriorating neurologically. Id. at 1120. In other words, the subsequent treating physician testified that he would have treated the child differently under the competing factual scenarios. The gist of his "expert" testimony thus was that the child's "true condition" was the "key point" that would have determined "the timing of intervention." Id. And he explained why, assuming that the child was in fact awake and oriented, it would not have mattered if the child had come under his physical care two hours earlier than she did. Id. at 1117. Nothing within the four corners of the Cantore opinion supports the conclusion that the subsequent treating physician testified that he would not have treated the child differently-and that the end result would have inevitably been the same-even if the child's "true condition" was as asserted by the plaintiffs at trial. The nature of the deposition testimony in Cantore -as described by the district court within the four corners of its opinion-is dramatically different than that in Saunders , in which the original treating physician did not correctly diagnose the patient, and in which the subsequent treating physician testified that a correct diagnosis would nevertheless not have affected the subsequent treatment of the patient.
Conclusion
The majority improperly bases its determination of jurisdiction in this case on its "disagreement with the result reached by a district court applying" Saunders , as opposed to on express and direct conflict with Saunders . Dorsey v. Reider , 139 So.3d 860, 867 (Fla. 2014) (Canady, J., dissenting). Because Saunders and Cantore involve entirely different questions of law, and because the controlling facts in the two cases are not substantially similar, this Court does not have jurisdiction in this case. Accordingly, I dissent.
LAWSON, J., concurs.

Fabre v. Marin , 623 So.2d 1182 (Fla. 1993).

At the time of trial in Cantore , two defendants remained-(1) the hospital at which the original treating physician provided care, and (2) the hospital that provided the helicopter transportation service and at which the subsequent treating physician performed the emergency ventriculostomy that saved the child's life. Cantore , 174 So.3d at 1115-17, 1121.